CLOSED

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

|  | | |
| --- | --- | --- |
| LINDA GUZMAN, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 03-cv-6154 (WHW) |
| | : | |
| JO ANNE B. BARNHART, | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**Walls, District Judge**

Plaintiff, Linda Guzman ("Plaintiff"), appeals the denial of Supplemental Security Income ("SSI") benefits under title XVI of the Social Security Act by the Administrative Law Judge ("ALJ"). This Court remands the case to the Commissioner of Social Security ("The Commissioner") pursuant to 20 C.F.R. § 404.983 for a finding consistent with this decision.

### BACKGROUND

**A. Procedural History**

On April 30, 2001, the plaintiff filed an application for SSI benefits. (Tr. 85-87). This claim was denied on August 29, 2001. (Tr. 61-65). The Commissioner denied reconsideration of the claim on December 10, 2001. (Tr. 67-68). Plaintiff requested a hearing (Tr. 69), which was held on November 6, 2002 before the ALJ. (Tr. 27).

1

Plaintiff appeared at the hearing before the ALJ with counsel and gave testimony. The medical expert also testified at the hearing. On December 27, 2002, the ALJ denied plaintiff's application. (Tr. 13-21). Plaintiff filed a request for appeals council review of the decision on January 24, 2003. (Tr. 12). The appeals council denied this request, and the decision of the ALJ became final on October 8, 2003. (Tr. 7-8).

This Court notes that plaintiff filed an earlier application for SSI on September, 10, 1996. (Tr. 195-198). This claim was also denied initially (Tr. 199-204) and upon reconsideration. (Tr. 225-227). ALJ Dean W. Determan conducted a hearing and subsequently issued a denial on September 28, 1998. (Pl. Complaint 2). Appeals council review was denied on March 16, 2001. (Tr. 292-293). Plaintiff then sought review in the district court where she consented to a voluntary remand, pursuant to sentence four of 42 U.S.C. §405(g). Before the plaintiff's claim was resolved on remand, that claim was consolidated with the current claim.

**B. Statement of Facts**

Plaintiff, a forty-four year old woman, alleges that she is disabled under Section 1614(a)(3)(A) of the Social Security Act. She has twelve years of education and her last job was as a receptionist. (Tr. 17). Her job consisted of primarily sedentary tasks such as typing, filing, and answering the phone. She has three children and currently resides in North Bergen, New Jersey.

Plaintiff alleges a combination of impairments including obesity, congenital long QT syndrome[a] and anxiety related disorders. The record also shows that plaintiff has in the past

---

[a] Congenital long QT syndrome is a cardiac condition whereby a "dysfunctional transmission" of a so-called "QT wave" impulse to the heart can cause a serious arrhythmia resulting in death. (Tr. 46).

2

**CLOSED**

claimed impairment due to Lyme disease and seizures. Since making this claim, these

impairments were treated with antibiotics, and plaintiff has not experienced seizure activity since

1996. (Tr. 274). Recent medical records contain only cursory references to these impairments.


**Physical Impairments:**

In January, 1997, plaintiff was examined by Dr. Sam Wilchfort who diagnosed her with

shortness of breath related to obesity, joint pain, palpitations and anxiety. The plaintiff reported

to Dr. Wilchfort that she was not taking any medication for joint pains in her ankles or knees.

He noted that she had a normal gait and was able to toe and heel walk." Dr. Wilchfort described

the anxiety as "her major problem," and treated it with Alprazolam (Xanax). (Tr. 276).

In July of 2001, Dr. Luis Gonzalez reported that plaintiff was morbidly obese at 5'3" tall

and 266 pounds. He also reported that she had previously been diagnosed with congenital long

QT syndrome. (Tr. 144). Plaintiff did not suffer irregular pulse, chest discomfort, shortness of

breath or other common cardiovascular symptoms, nor did she have a history of heart failure or

fainting. (Tr. 145, 182). Dr. Gonzalez referred her to an electrophysiologist and suggested that

she quit smoking and lose weight. (Tr. 146). She was treated with beta-blockers for this

condition. Id.


**Mental Impairments:**

In February 1997, shortly after Dr. Wilchfort diagnosed her with anxiety, plaintiff was

examined by Dr. Francisco Brache. He reported that her anxiety was being treated with

pharmaceuticals. (Tr. 281). Dr. Brache surmised that plaintiff possibly suffered from

3

"generalized anxiety disorder" and recommended continued pharmaceutical treatment.  He also suggested that psychotherapy "could be helpful."  However, he determined that plaintiff was "functioning at an average level." (Tr. 282).

Dr. Walter Castillo, a licensed psychologist, saw plaintiff on an irregular basis in his office from August 1997 to present. Dr. Castillo corroborated Dr. Brache's diagnosis of generalized anxiety disorder in a July 2001 psychiatric report.   He found the plaintiff to be credible in her description of her symptoms, but suggested that she was "not limited in her daily activities," (Tr. 151) and that her prognosis was "good." (Tr. 152).

**Medical Expert's Testimony:**

Dr. Donald Peyser ("ME Peyser"), who is a cardiac specialist, testified at the hearing as a medical expert.  (Tr. 45-56).  He testified that plaintiff's cardiac condition could be *acutely* dangerous, but that there was no evidence that it had yet resulted in any serious impairment of her daily functioning.  (Tr. 47).  He further stated that plaintiff's complaints of dizziness were not related to her cardiac condition but could be related to anxiety or an untreated inner ear condition.  (Tr. 53-54).  The ALJ asked ME Peyser if plaintiff should be "worked up for that," to which he responded, "I think so."  (Tr. 54).  At that time, plaintiff's counsel suggested that a psychological consultative examination be performed, as well as a supplemental hearing with a psychologist.  While The ALJ agreed to take these suggestions "under advisement," further examinations did not take place.  (Tr. 55).

4

CLOSED

ME Peyser also testified that plaintiff's condition does not "equal a listing"[b] (Tr. 50) and that she is physically capable of performing sedentary work. (Tr. 50-51).


ANALYSIS

**A. Standard of Review**

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The d[...] Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Plummer</u>[...] 1999) "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind[...] support a conclusion."  <u>Metro Stevedore Co. v. Rambo</u>, 521 U.S. 121, 149 (1997) (quoting <u>Consolidated Edison</u>[...] 229 (1938)).  While substantial evidence must have real probative weight it "may be less than a preponderance." [...] 1211, 1213 (3d Cir. 1988) (citing <u>Stunkard v. Sec'y of Health & Human Servs.</u>, 841 F.2d 57, 59 (3d Cir. 1988))[...]

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain[...] the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evide[...] F.3d 310, 317 (3d Cir. 2000).  Cursory conclusions unsupported by evidence cannot justify an ALJ's decision.  <u>Id</u>[...] remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicit[...] decision on the plaintiff's claim for disability benefits.'"  <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 409 (3d Cir. 19[...] <u>Weinberger</u>, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).

In determining if there is substantial evidence to support the Commissioner's decision, the reviewing cou[...] objective medical facts; (2) diagnoses and expert opinions of examining physicians; (3) subjective evidence of pa[...] educational background, work history and age."  <u>Snee v. Sec'y of Health & Human Servs.</u>, 660 F. Supp 736, 738[...]

---

[b] 20 C.F.R. Part 404, Subpart P, Appendix 1, ("the listings") contains "listings" of particular impairments.  If a claimant's impairment is sufficiently similar to one of the impairments listed, it "equals a listing," and the claimant is presumed to be disabled and entitled to benefits without further analysis.

5

v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972).  In order for this Court to properly conduct judicial review and

administrative functions" it must ensure that the "administrative decision . . . [is] accompanied by a clear and sat

basis on which it rests."  Id.  Otherwise, remand is appropriate.  Cotter v. Roberts, 642 F.2d 700, 705 (3d Cir. 19

## B.  Standard of the Commissioner's Determination of Disability

Disability is defined by the Social Security Act as "inability to engage in any substantial gainful activity b

medically determinable physical or mental impairment which can be expected to result in death or which has last

a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner must follow a five-step sequential process to determine if an applicant is disabled and

disability benefits.  20 C.F.R. § 404.1520.  The Commissioner must first determine whether or not the plaintiff is

"substantial gainful activity."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  "Substantial gainful activity

performance of significant physical or mental duties . . . for remuneration or profit."  Chicager v. Califano, 574 F

 Second, if the plaintiff is not engaged in "substantial gainful activity" then the ALJ must next determine

from a severe impairment.  Plummer, 186 F.3d at 428.  A severe impairment is defined as "any impairment or co

which significantly limits the plaintiff's physical or mental ability to do basic work activities."  Barnhart v. Thom

20 C.F.R. §§ 404.1520(c), 416.920(c).

If the plaintiff's impairments are severe, the ALJ must make a third determination that they are listed in A

the regulations or are equivalent to those impairments listed.  Plummer, 186 F.3d at 428; 20 C.F.R. § 404.1520.

nor equivalent to those listed in the appendix, then the ALJ must make a fourth finding regarding the plaintiff's "

perform" his or her "past relevant work."  Id.  "Residual functional capacity is defined as what a plaintiff can stil

Burns, 312 F.3d at 119.

If the ALJ holds that the plaintiff cannot return to his or her "past relevant work" due to the impairments,

determine if there are "other jobs existing in significant numbers in the national economy which the plaintiff can

6

**CLOSED**

his or her educational and work experiences.  <u>Plummer</u>, 186 F.3d at 428.

**C.  Analysis**

        In this claim, plaintiff seeks SSI benefits for a combination of impairments that include

both physical and mental components.  The impairments at issue here are her cardiac condition,

her obesity and her anxiety.  Plaintiff has alleged additional impairments in the past, such as

Lyme disease and seizures, which receive only cursory mention in the current claim before this

Court.  Accordingly, the Court will not consider these particular impairments at this time.

        In his decision, the ALJ applied the five-step test set forth in 20 C.F.R § 404 to the

evidence.  (Tr. 17).  Neither party has raised objections to the first stage of the evaluation.  At the

second stage, Plaintiff argues that her combined impairments, and particularly her anxiety,

should have been considered "severe" within the meaning of the Social Security Act.  (Pl. Brief

12-22).  While her argument is convincing, the ALJ plainly states that he *does* find her obesity,

congenital long QT syndrome, and anxiety "severe within the meaning of the regulations."  (Tr.

17).  The Commissioner also concedes that Plaintiff's impairments are "severe", but asserts that

they do not "adversely affect her ability to perform daily activities."  (Def. Brief 19).  Because

the parties agree that the Plaintiff's impairments are severe, the Court will consider the *de

minimus* standard to have been met and stage two to be satisfied.

7

After comparing these impairments to specific listings in Appendix 1, Subpart P, the ALJ found that Plaintiff's severe impairments do not meet or equal any impairment listed there. (Tr. 18). Plaintiff essentially concedes this with regard to her cardiac and psychological symptoms. Therefore, our analysis of Plaintiff's obesity begins at stage three: does Plaintiff's condition, considered in conjunction with her obesity, meet or equal a listing? If the answer is no, we move to stage four: does Plaintiff's combination of impairments prevent her from performing her past relevant work?

### 1. Plaintiff's Physical Impairments

The ALJ's assessment of Plaintiff's residual functional capacity ("RFC") with regards to her physical impairments is supported by substantial evidence. This evidence consists of various physicians' reports, the testimony of ME Peyser and the Plaintiff's testimony. Throughout his decision, the ALJ relies heavily on ME Peyser's assessment that Plaintiff has the RFC to perform sedentary work.[c] It is clear that ALJ's questions to ME Peyser regarding RFC were carefully designed to avoid dealing with the Plaintiff's mental issues.[d] Therefore, ME Peyser's assessment that Plaintiff has an RFC to perform "sedentary" work is understood by the Court to only reflect ME Peyser's assessment of her *physical* limitations.[e] The ALJ's finding that her physical impairments do not prevent her from performing sedentary work is supported by

---

[c] The ALJ questioning ME Peyser at the hearing:
"Q: But, I mean, is there anything in the file physically that would limit her working at say sedentary or light work? A: No, I don't see anything." (Tr. 50-51)
[d] This is likely because ME Peyser is a cardiac specialist and not a psychiatric professional. The ALJ clearly understands that mental conditions are not ME Peyser's "ball of wax." (Tr. 54)
[e] The ALJ began his questioning of the witness with the caveat: "I'm talking only physically now. We're not going to get involved with depression." (Tr. 50)

**CLOSED**

substantial evidence.

### a. Cardiac Condition:

The record includes a number of detailed reports from physicians dating from 1996 regarding Plaintiff's cardiac condition.  While there is general agreement that Plaintiff does, in fact, suffer from congenital long QT syndrome, there is also substantial evidence in the record that Plaintiff does not suffer the more serious symptoms that are sometimes associated with this condition.  ME Peyser testified that she has a "potential for a problem, which does not appear to be what her history is right now."  (Tr. 48).  Despite the serious nature of the condition, the actual effect on Plaintiff's daily activities appears to be minimal, and there is substantial evidence that the symptoms that she does possess, like dizziness, are unrelated to her cardiac condition.

The record supports the ALJ's conclusion that Plaintiff's cardiac condition, while potentially dangerous to her long-term health, poses few functional limitations on her daily life. The ALJ relied on substantial evidence when he concluded that Plaintiff's dizziness and other symptoms were not cardiac related and that she was capable of performing sedentary work despite this condition.

### b. Obesity:

Plaintiff, who at one time weighed 266 pounds, first contends that she is presumptively disabled under the now-defunct obesity listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Under section 9.09 of the listings, a woman who stood 5 feet, 3 inches tall and weighed more

than 250 pounds was "presumptively disabled." Id.  However, on August 24, 1999, the SSA

published a final rule in the Federal Register deleting listing section 9.09.  See SSR 02-1p

(2002).  Since Plaintiff's current claim was initiated in 2001, she cannot be considered disabled

under paragraph section 9.09.  Id.

According to guidelines promulgated by the SSA in SSR 02-1p, an obese individual only

meets a listing when she has another impairment that, by itself, meets the listing requirements.

Id.  Obesity is now considered in conjunction with other impairments during Step 3, and

paragraphs reflecting the SSA's recognition of the disabling effect of obesity have been added to

the listings sections 1.00Q, 3.00I, and 4.00F.  Id.  Although Plaintiff asserts that the ALJ "never

assesses plaintiff's obesity in his listings determination," (P. Brief 22), the ALJ's decision states

that he considered listings in sections 1.00, 4.00, 11.00 and 12.00[f] and ruled that Plaintiff's

combination of conditions, including obesity, did not meet or equal one of these listings.

Although Plaintiff contends that the ALJ did not consider her obesity in his listings

determination, she does not cite a single listing that she believes her severe impairments meet or

equal.  The sections in the listings that contain references to obesity are 1.00Q, 3.00I, and 4.00F,

which refer to musculoskeletal, respiratory and cardiac impairments, respectively.  Plaintiff's

only respiratory impairment, shortness of breath, was not considered to be severe, so it cannot be

considered at the listing stage and the ALJ was correct not to consider section 3.00.  The ALJ is

required to consider "additional or cumulative effects" of obesity in considering the

musculoskeletal and cardiac listings under sections 1.00Q and 4.00F.  The ALJ relied on

substantial evidence that Plaintiff's cardiac and musculoskeletal impairments did not meet or

_____

[f] These listings include musculoskeletal, cardiovascular, neurological and mental impairments.

**CLOSED**

equal the listings, even when considered with cumulative effects of Plaintiff's obesity.

Section 1.00-1.08 of the listings contain musculoskeletal impairments ranging from major joint dysfunction, reconstructive surgery, spinal disorders, amputations, fractured bones, and burns.  The ALJ rejects this listing and cites the fact that "[t]he claimant reported to Dr. Wilchfort that she was not taking any medication for joint pains in her ankles or knees.  He noted that she had a normal gait and was able to toe and heel walk."  (Tr. 18).  The Court finds that this is substantial evidence to support the ALJ's finding that Plaintiff's impairment does not equal any listing in section 1.00.

Section 4.00-4.10 of the listings contain cardiac impairments ranging from chronic heart failure, hypertenstive cardiovascular disease, ischemic heart disease, recurrent arrhythmias, congenital heart disease, valvular heart disease, cardiomyopathies, cardiac transplantation, and aneurysm.  The ALJ rejects this listing and cites the fact that Plaintiff did not suffer irregular pulse, chest discomfort, shortness of breath or other common cardiovascular symptoms, nor did she have a history of heart failure or fainting, or any of the other conditions listed in section 4.00 of the listings.  (Tr. 145, 182).  This Court is satisfied that the ALJ relied on substantial evidence in interpreting the current rule and correctly concluded that Plaintiff is not presumptively disabled pursuant to any of the listing categories related to obesity.

Plaintiff's other contention is that the ALJ did not take plaintiff's obesity into account during his RFC determination.  The ALJ did acknowledge that he considered the Plaintiff's obesity to be severe under the regulations, although it did not meet or equal a listing. (Tr. 17). The current rules take obesity into account during an RFC determination if the plaintiff's obesity causes a limitation of function.  SSR 02-1p.  Such limitations generally take the form of

11

exertional and postural limitations such as pain, limitation of motion, back problems and respiratory problems.  Id.

While more than one doctor described Plaintiff as morbidly obese, none suggested that this limited her daily routine or affected her ability to perform sedentary work.  ME Peyser testified that Plaintiff did, in fact, have the physical RFC to perform sedentary work. The ALJ notes that Plaintiff complains of joint pain, but that she does not take any medication for this pain and that her doctors have not reported that the plaintiff experienced any exertional problems.  The ALJ relied on substantial evidence when he ruled that Plaintiff's obesity, even when considered in conjunction with her other physical impairments, does not prevent her from having the RFC for performing sedentary work.

### 2. Plaintiff's Mental Impairments

The ALJ clearly states the Plaintiff's "anxiety related disorders [are] impairments that are severe within the meaning of the Regulations...." (Tr. 17).  Therefore, this Court must determine whether the ALJ relied on substantial evidence when he determined Plaintiff's RFC and her ability to perform her past relevant work in light of her severe mental impairment.  This Court finds that the ALJ did not rely on substantial evidence in making this finding nor does the record contain substantial evidence to support such a finding.

In his decision, the ALJ cites three sources for his assessment of Plaintiff's mental impairment:

> (1) Dr. Wilchfort noted that plaintiff's main problem was anxiety and that she was being treated with psychotropic medications,

12

**CLOSED**

(2) Consultative Examiner Dr. Brache's 1997 report stated that plaintiff had a history
of generalized anxiety disorder, was taking psychotropic medications, and was
not currently in psychotherapy, and

(3) Dr. Walter Castillo's July, 2001 psychiatric report diagnosed plaintiff's
generalized anxiety disorder, discussed her limitations or lack thereof, and
announced that her prognosis was "good." (Tr. 18-19)

On the strength of these three reports and the hearing testimony, the ALJ then determined:

> The plaintiff's mental condition has not been shown to significantly affect her ability to
> understand, carry out and remember instructions, use judgment, respond appropriately to
> supervision, co-workers and usual work situations, and deal with the changes in a routine
> work setting.  Nor does the plaintiff's mental condition significantly affect her activities
> of daily living, her social functioning, concentration, persistence or pace.  Moreover, The
> (sic) plaintiff has had no episodes of decompensation. (Tr. 19)

The ALJ then states that the alleged symptoms to which plaintiff testified, including dizziness,

shortness of breath, heart palpitations, and light-headedness, are "not fully credible."  (Tr. 20).

It is the ALJ's right and duty to assess the credibility of Plaintiff's testimony, but it is

also his right and duty to ensure that the record is complete and that Plaintiff has had the ability

to fully present her case.  20 C.F.R. § 404.1512(d).  Here, the ALJ diligently explored the

implications of the plaintiff's cardiac condition.  He accomplished this by questioning ME

Peyser at length regarding the documentary evidence provided in various reports and by

questioning the Plaintiff at length regarding the nature of her physical impairments.  In contrast,

the ALJ asks Plaintiff only a few questions regarding her mental impairments.[g]  During the

hearing, Plaintiff's attorney attempted to raise a question of whether Plaintiff's dizziness and

---

[g] In twenty-eight pages of testimony, only three pages include questions regarding Claimant's "severe" mental
impairment.  (Tr. 43-45)

13

heart palpitations may have been caused by her anxiety,[h] but the ALJ continued to focus on her

cardiac-related issues. However, ME Peyser, who is a cardiac specialist, opined that plaintiff's

dizziness was "probably not cardiac-related," and possibly linked to "emotional factors." (Tr.

53-54). The following exchange then took place between the ALJ and the ME:

> Q: Should she be worked up for that?
> A: I think so because that's one of her biggest complaints." (Tr. 54)

This is the first piece of evidence in the record that suggests that Plaintiff's dizziness and

emotional condition might be related. This statement, adduced at the hearing by the ALJ

himself, is a new piece of evidence. This new evidence presents the possibility that Plaintiff's

mental impairment might be more serious than previously diagnosed. In light of this new

evidence, the ALJ had a duty to take action to ensure the completeness of the medical record.

See Plummer, 186 F.3d at 433. At the end of the hearing, Plaintiff's counsel requested that the

ALJ keep the record open in an attempt to cure this lack of completeness and consider the new

evidence. Although the ALJ did not deny this motion outright, the record was never completed.

> ALJ: Very good. Thank you very much, ladies and gentleman. (sic)
> ATTY: Well, can I –
> ALJ: Oh, you want to talk or what?
> ATTY: I want to keep talking.
> ALJ: What? What?
> ***
> ALJ: Yeah. Sure. Go ahead. Go ahead. What?
> ATTY: We have a 40-year-old who applied for SSI in April of '01. She has long-standing complaints of dizziness. She sees a psychiatrist who treats her on a regular basis. I think your Honor should do one or two things before closing the record. Number one – these are suggestions. Number one, a psych CE. Number two, a supplemental hearing with a psychologist – psychiatrist.
> ALJ: Okay. I'll take it under advisement. (Tr. 54-55)

---

[h] Claimant's attorney: "The one doctor says your dizziness is because of your anxiety. Some doctors say it is because of your heart. Did you ever figure out why?" (Tr. 47)

**CLOSED**

In general, an ALJ has a duty to "make every reasonable effort" to complete the medical record before making his decision.  20 C.F.R. § 404.1512(d).  The ALJ has the responsibility to analyze all evidence and provide an adequate explanation if he chooses to disregard any piece of evidence.  Reefer v. Barnhart, 326 F.3d 376, 381-2 (3d Cir. 2003).  The ALJ's decision did not consider evidence that: (1) Plaintiff's mental condition required further "work up," and (2) plaintiff's dizziness may have been related to emotional factors.

In addition, the ALJ is required to rely on substantial evidence in making a determination of how plaintiff's severe mental impairment affects her RFC.  20 C.F.R. § 404.1545.  The medical record indicates that Plaintiff's physicians suspected her mental impairment to be relatively mild, but they do not give any specific indication of how her mental impairment might affect her RFC, especially in light of new evidence.  The medical reports that the ALJ cites do not contain these specific findings, nor does the hearing testimony.  In any case, the ALJ's right to make an RFC determination based solely on the Plaintiff's testimony is very limited when mental impairments are involved.  Morales, 225 F.3d at 319.  "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." Id.

This case has a number of elements in common with another Third Circuit case, Plummer v. Apfel, 186 F.3d 422. In that case, as here, there was substantial evidence that the plaintiff suffered from palpitations, anxiety and depression and was similarly diagnosed by her physician with generalized anxiety disorder and given psychotropic medication.  There, the ALJ did not consider evidence of this mental illness in the record and found that her illness "only caused slight restrictions on her daily activities, and thus had no effect on her residual functional

15

capacity." Id. at 433.  The Third Circuit vacated this ruling because it found that when faced with new evidence of a mental impairment, an ALJ must either remand or consider the new evidence. Id.  Here, ME Peyser's testimony that Plaintiff's dizziness may be caused by "emotional factors," is an example of such new evidence as contemplated by the Third Circuit's ruling in Plummer.  Despite this, the ALJ never mentions this testimony or the Medical Expert's suggestion in his decision.  The ALJ "did not fully explore the plaintiff's alleged mental impairment." Id.  Again, similar to Plummer, "[T]he ALJ did not solicit [Plaintiff's] testimony at the hearing as to how her anxiety and depression affected her activities of 'daily living,' 'social functioning,' 'concentration,' 'persistence or pace'…" Id. at 433-434.  An assessment of these four aspects of daily functioning is integral to any determination of whether a *severe* mental impairment rises to the level of a *disabling* mental impairment.  *See* 20 C.F.R. § 416.920a. Simply asserting that Plaintiff's mental impairment does not affect these aspects of her functioning without citing evidence is not sufficient.  The ALJ had a duty to develop the record further by inquiring into the present status of Plaintiff's mental impairment and its possible effects on Plaintiff's ability to work, or explain his reasons for deciding not to seek additional information.  See Schwartz v. Halter, 134 F. Supp.2d 640, 658 (E.D. Pa., 2001).

**CONCLUSION**

In light of the above, this matter is remanded to the Commissioner of Social Security for further action consistent with this ruling.  In accordance with 20 C.F.R. § 404.983, The Commissioner shall evaluate this new evidence and update the findings with all due speed and care.  20 C.F.R. § 404.983.  Furthermore, the Commissioner shall consider the combined effect

16

**CLOSED**

of all of Plaintiff's impairments, physical and mental, and determine Plaintiff's eligibility for

disability benefits.

**<u>s/ William H. Walls, U.S.D.J.</u>**